IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

3385 ROCHESTER ROAD LLC,

     Plaintiff,

v.

COUNTY OF OAKLAND by
its BOARD OF COMMISSIONERS,
ANDREW E. MEISNER, in his
individual and official capacity, and
CITY OF TROY,

     Defendants.

Case No. 21-CV-_____

Hon. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff 3385 Rochester Road LLC, through counsel, states as follows for its Complaint against the County of Oakland by its Board of Commissioners, Andrew E. Meisner, in both his individual and official capacities, and the City of Troy ("Defendants"):

1.    This is a case of deliberate government overreach without regard to Plaintiff's fundamental rights to property and due process. Simply put, Defendants have abused this State's tax-foreclosure process to unjustly enrich themselves by foreclosing on Plaintiff's property and illegally retaining proceeds far in excess of the amounts owed to them—to the tune of hundreds of thousands of dollars.

2.      While Michigan law permits counties to foreclose on properties in order to satisfy unpaid property-tax obligations, neither it nor the federal or state Constitutions sanction Defendants' retention of funds generated from such foreclosures beyond the obligations owed by the property-owner.

3.      Defendants are permitted to foreclose on a tax-delinquent property, sell that property at fair market value, and retain sufficient proceeds from that sale to satisfy any amounts owed and reasonable fees related to the sale.  But they then must remit the remainder to Plaintiff.

4.      Instead of following the law, Defendants foreclosed on Plaintiff's property, sold it well below fair market value, and ***kept all the proceeds*** from the sale.  That is, they returned nothing to Plaintiff even though the proceeds from the sale is significantly greater than what Plaintiff owed in taxes.  The result is a windfall for the county government—and a theft from Plaintiff.

5.      Defendants' unlawful retention of these proceeds deprived Plaintiff of the entire equity value of its property.  Their actions violate the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, Section 2 of Article X and Section 16 of Article I of the Michigan Constitution of 1963, and this State's inverse-condemnation laws.

**PARTIES**

6.     Plaintiff 3885 Rochester Road LLC is a Michigan limited liability company with two members: Rahif Murray and Hussein Murray, each a Michigan citizen.

7.     Plaintiff owned the property at 3385 Rochester Road, Troy, Michigan (Parcel # 88-20-22-401-067), or the "Property."

8.     Defendant County of Oakland is a political subdivision of the State of Michigan that is controlled or operated by its Board of Commissioners.

9.     Defendant Andrew E. Meisner is the County Treasurer of Oakland County, a public office that she has held since 2009.  Defendant Meisner resides, on information and belief, in Oakland County.  He is sued in both his individual and official capacities.

10.     Defendant City of Troy is a political subdivision of the State of Michigan and is located in Oakland County, Michigan that is controlled or operated by its City Council.

**JURISDICTION AND VENUE**

11.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 as it presents questions arising under the laws and Constitution of the United States.  Subject-matter jurisdiction is proper over the state-law claims based on supplemental jurisdiction under 28 U.S.C. § 1367.

3

12.    This Court has personal jurisdiction over Defendants as they are residents of this District. Personal jurisdiction is also proper over Defendants because they regularly transact claim-related business in this District.

13.    Venue is proper under 28 U.S.C. § 1391 because all Defendants reside in this District and also because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**GENERAL ALLEGATIONS**

**A.    Michigan's Tax Foreclosure Scheme**

14.    In general, real property is subject to taxation. While various subdivisions of the State have taxing authority, Defendants are the ones charged with the foreclosure-and-auction process to recoup unpaid taxes on delinquent properties in Oakland County.

15.    Specifically, Defendant Oakland County, through its Board of Commissioners, voluntarily chose Defendant Meisner, in his official capacity, to serve as the "foreclosing governmental unit" for Oakland County as that term is defined in Mich. Comp. Laws § 211.78(8)(i).

16.    Where a property-owner has been delinquent in paying his property taxes, the property on which he is delinquent in his taxes may be forfeited to a county treasurer, like Defendant Meisner, and foreclosure proceedings can commence.  *See generally* Mich. Comp. Laws § 211.78m.

4

17.    Even though the amount of taxes that a property-owner is delinquent on for a given property is often far less than the fair market value of the property, Defendants have a policy and practice of retaining the entirety of proceeds generated from any post-foreclosure auction.

18.    When a foreclosed-upon property is auctioned to generate revenue to pay delinquent property taxes, Defendants do not just keep the Taxes Owed.[1] Rather, they keep the entire auction amount from the auction sale and return ***none*** of the proceeds to the property-owner, thereby reaping the unjust rewards of Excess Proceeds[2] from that property.

19.    But not only that, because Defendants (as they did here) often sell property for below fair-market value, they also destroy the entirety of the Equity[3] in that property.

20.    The effect of this consistent practice is that Defendants unlawfully retain monies far in excess of the Taxes Owed.  That is, the auction satisfies the delinquent taxes, and this case is concerned with the actions following the

---

[1]   As used in this Complaint, "Taxes Owed" is defined as the past due taxes owed on a parcel of property together with any interest, fees, penalties, and costs.

[2]   As used in this Complaint, "Excess Proceeds" is defined as the auction sale price of a parcel of property less Taxes Owed.

[3]   As used in this Complaint, "Equity" is defined as the fair-market value of a parcel of property less Taxes Owed.

satisfaction of taxes—namely, the unlawful retention or destruction of proceeds beyond the Taxes Owed.

**B.     The Property and Plaintiff's Efforts to Redevelop It**

21.     The Property is a commercial property that included a vacant building, which at one time, housed a Taco Bell restaurant.  The Property is very valuable due to its location on a busy stretch of Rochester Road between Big Beaver and Wattles Roads in Troy, Michigan.   It is a prime candidate for redevelopment.

22.     Plaintiff originally purchased the property in 1997.  Rahif Murray has been a member of Plaintiff since its organization, while Hussein Murray came on as a member of Plaintiff in 2007.

23.     Over the years, Plaintiff made numerous attempts to rehabilitate and redevelop the Property.

24.     In 2004, Plaintiff made plans to open a restaurant at the Property, even going so far as to purchase various restaurant equipment which, on information and belief, remained in the building.  That restaurant never came to fruition as the then-sole member of Plaintiff Rahif Murray was diagnosed with cancer.

25.     Several years later, after Hussein Murray joined as a member, Plaintiff explored the possibility of demolishing the vacant building and constructing a new building with approximately 5,200 square feet of space for commercial and retail

use. Plaintiff hired architects and other professionals to assist with this project, but plans unraveled when the economy soured and they were unable to obtain financing.

26.     In 2015, Plaintiff again pursued an opportunity to redevelop the Property through a potential buyer and invested a great deal of time and resources pursuing the deal. The Property was under contract for many months with a purchase price of $675,000. But at the last minute, the buyer walked away.

27.     Plaintiff's members had intended to use proceeds from the sale to help pay for the costs of caring for their nonagenarian mother. Both Rahif and Hussein spent a majority of their free time caring for their mother. Hussein even took out a home equity loan to pay off a high-interest mortgage on the Property.

28.     Plaintiff never intended to let the Property fall into tax foreclosure.

29.     While Plaintiff understood that there were some delinquent taxes on the Property, Plaintiff did not understand or actually see any notices that the property could be foreclosed.

30.     At the time, neither Rahif nor Hussein regularly visited the Property and so did not see any foreclosure notices posted on a window or door there.

31.     Plaintiff attempted to quash the foreclosure but was unsuccessful. *See In The Matter Of The Petition By The Oakland County Treasurer For Foreclosure*

*Of Certain Lands For Unpaid Property Taxes (3385 Rochester Road, Troy)*, No. 2017-159297-CZ (Oakland Cty. Cir. Ct.).

**C.    Defendants' Unlawful Retention of Plaintiff's Excess Proceeds and Destruction of Plaintiff's Equity in the Property.**

32.    The Property had delinquent taxes of approximately $15,043.65. Because of this, Defendant Meisner foreclosed on and seized ownership of the Property on behalf of Defendant Oakland County on or about February 14, 2018.

33.    Defendants did not initiate any condemnation proceedings related to the Property.

34.    On or about July 12, 2018, Defendant City of Troy exercised its then statutory right to purchase the property under MCL 211.78m(1) for the minimum bid amount of $22,797.82, being the delinquent taxes, interest and fees.

35.    Following a September 2019 "auction" with only one bidder, Defendant City of Troy sold the Property for $370,000.00 on or about June 1, 2020.

36.    That sale price is $347,202 greater than the Taxes Owed on the Property.  Instead of remitting this nearly $350,000 in Excess Proceeds to the Plaintiff, Defendants unlawfully retained it.

37.    And because Defendants sold the Property well-below fair-market value, Defendants wiped out additional amounts of Plaintiff's Equity in the Property.

38.     Defendants did not (and do not) provide any process or legal mechanism to seek, let alone recover, either the Equity destroyed by or the Excess Proceeds generated and retained by their actions in foreclosing and selling the Property.

39.     Further, Defendants have refused (and refuse) to pay Plaintiff just compensation in the amount of Plaintiff's Equity in the Property (or even the Excess Proceeds in the Property).  Indeed, Defendants have failed to provide any mechanism for compensation at all.

**D.     Plaintiff is Not Alone; Defendants Have Perpetuated this Process Repeatedly as a Matter of Practice and Policy.**

40.     The actions described above related to Plaintiff's Property are not a one-off.  Rather, upon information and belief, they reflect a policy, custom, and/or practice voluntarily undertaken by Defendant Oakland County and/or its final policymaker in conjunction with other cities, such as the City of Troy.

41.     This voluntary practice or policy of Defendant Oakland County and/or its final policymaker meets the criteria for liability pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).

42.     In particular, Defendant Oakland County chose to designate its county treasurer, Defendant Meisner, as its foreclosing governmental unit under Michigan law.  And then through legislative action, official governmental policies or regulation, and/or other actions taken by official(s) with final decision-making

9

authority, Defendants have established a scheme whereby they foreclose and sell tax-delinquent properties and retain ***all proceeds*** from such sales—never returning any funds to the original property-owner—regardless of the fair-market value, sale price, or Taxes Owed on the property.  Nor do Defendants provide any mechanism for property-owners to secure the return of their Equity, or even the Excess Proceeds.

43.    The General Property Tax Act, including Mich. Comp. Laws § 211.78m(8), neither requires nor permits the practices outlined above.  *See generally Rafaeli, LLC v. Oakland Cty.*, 505 Mich. 429, 442 (2020).  Rather, the actions undertaken by Defendants were intentionally and wantonly designed to harm Plaintiff and others in their constitutionally protected property rights.

## CAUSES OF ACTION

### COUNT I: SECTION 1983 TAKING CLAIM UNDER THE
### FIFTH & FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

44.    Paragraphs 1–43 are incorporated as if stated verbatim herein.

45.    The Fifth Amendment is incorporated against the states through the Fourteenth Amendment and requires payment of just compensation upon a taking. *See Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).

46.    Defendants have taken Plaintiff's property, in the form of their Equity, and have appropriated that property for public use without paying of just compensation.

47.     Defendants have not paid, will not pay, and do not intend to pay Plaintiff just compensation.

48.     Defendants have refused to take any action for the payment of just compensation for their theft of Equity from the Plaintiff.

49.     Defendants, therefore, have deprived Plaintiff of its constitutional right to just compensation.

50.     All actions undertaken by Defendants in relation to these takings were done under color of state law.

51.     All actions undertaken by Defendants in relation to these takings were further done pursuant to official policy, practice, or custom of Defendants or their final policymakers.

52.     Defendants' actions were intentional and wanton as to Plaintiff's constitutional rights.

53.     These actions, as violations of the U.S. Constitution, are redressable under 42 U.S.C. §§ 1983, 1988.

54.     As a direct and proximate result of the Defendants' actions, Plaintiff has been injured by and suffered damages, including but not limited to the deprivation of Equity, Excess Proceeds, or other just compensation.

## COUNT II: TAKING CLAIM DIRECTLY ARISING UNDER THE
## FIFTH & FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

55.     Paragraphs 1–43 are incorporated as if stated verbatim herein.

56.     The Fifth Amendment is a self-executing provision of the United States Constitution and requires payment of just compensation upon a taking.

57.     Defendants have taken Plaintiff's property, in the form of their Equity, and have appropriated that property for public use without paying of just compensation.

58.     Defendants have not paid, will not pay, and do not intend to pay Plaintiff just compensation.

59.     Defendants have refused to take any action for the payment of just compensation for their seizure of Equity from the Plaintiff.

60.     Defendants, therefore, have deprived Plaintiff of its constitutional right to just compensation.

61.     Defendants' actions were intentional and wanton as to Plaintiff's constitutional rights.

62.     As a direct and proximate result of the Defendants' actions, Plaintiff has been injured by and suffered damages, including but not limited to the deprivation of Equity, Excess Proceeds, or other just compensation.

## COUNT III: TAKING CLAIM UNDER SECTION 2 OF
## ARTICLE X OF THE MICHIGAN CONSTITUTION OF 1963

63.    Paragraphs 1–43 are incorporated as if stated verbatim herein.

64.    Defendants have taken Plaintiff's property, in the form of their Equity, and have appropriated that property for public use without paying of just compensation.

65.    Defendants have not paid, will not pay, and do not intend to pay Plaintiff just compensation.

66.    Defendants have refused to take any action for the payment of just compensation for their seizure of Equity from the Plaintiff.

67.    Defendants, therefore, have deprived Plaintiff of its right to just compensation in violation of Article X, Section 2 of the Michigan Constitution of 1963.

68.    As a direct and proximate result of the Defendants' actions, Plaintiff has been injured by and suffered damages.

## COUNT IV: INVERSE CONDEMNATION/*DE FACTO*
## TAKING CLAIM UNDER STATE LAW

69.    Paragraphs 1–43 are incorporated as if stated verbatim herein.

70.    Defendants have taken Plaintiff's property, in the form of their Equity, and have appropriated that property for public use without paying of just compensation.

71.     Defendants have done so without using any direct condemnation process, including those provided for in Mich. Comp. Laws § 213.51 *et seq.*

72.     Defendants did not and do not provide any process, legal mechanism, or opportunity to seek recovery of either the Equity destroyed by or the Excess Proceeds generated by their actions in foreclosing and selling property.  Indeed, Defendants have failed to provide any mechanism for compensation at all.

73.     Defendants have not paid, will not pay, and do not intend to pay Plaintiff just compensation.

74.     Defendants have refused to take any action for the payment of just compensation for their seizure of Equity from the Plaintiff.

75.     An inverse condemnation or *de facto* taking has therefore occurred.

76.     As a direct and proximate result of the Defendants' actions, Plaintiff has been injured by and suffered damages, including but not limited to the deprivation of Equity, Excess Proceeds, or other just compensation.

### COUNT V: SECTION 1983 EXCESSIVE-FINES CLAIM UNDER THE EIGHTH & FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

77.     Paragraphs 1–43 are incorporated as if stated verbatim herein.

78.     The Eighth Amendment is incorporated against the states through the Fourteenth Amendment and forbids the imposition of excessive fines.  *See Timbs v. Indiana*, 139 S. Ct. 682 (2019).

14

79.    By imposing an excessive fine through the retention of the Equity in Plaintiff's property, Defendants have violated Plaintiff's constitutional rights.

80.    Because Equity is, definitionally, amounts beyond the Taxes Owed, its retention is necessarily punitive.

81.    All actions undertaken by Defendants in relation to these fine impositions were done under color of state law.

82.    All actions undertaken by Defendants in relation to these fine impositions were further done pursuant to official policy, practice, or custom of Defendants or their final policymakers.

83.    Defendants' actions were intentional and wanton as to Plaintiff's and constitutional rights.

84.    These actions, as violations of the U.S. Constitution, are redressable under 42 U.S.C. §§ 1983, 1988.

85.    As a direct and proximate result of the Defendants' actions, Plaintiff has been injured by and suffered damages, including but not limited to the deprivation of Equity or Excess Proceeds.

**COUNT VI: EXCESSIVE-FINES CLAIM UNDER SECTION 16 OF <u>ARTICLE I OF THE MICHIGAN CONSTITUTION OF 1963</u>**

86.    Paragraphs 1–43 are incorporated as if stated verbatim herein.

87.    Section 16 of Article I of the Michigan Constitution forbids the imposition of excessive fines.

15

88.     By imposing an excessive fine through the retention of the Equity in Plaintiff's property, Defendants have violated Plaintiff's constitutional rights.

89.     Because Equity is, definitionally, amounts beyond the Taxes Owed, its retention is necessarily punitive.

90.     Defendants' actions were intentional and wanton as to Plaintiff's and constitutional rights.

91.     As a direct and proximate result of the Defendants' actions, Plaintiff has been injured by and suffered damages, including but not limited to the deprivation of Equity or Excess Proceeds.

## COUNT VII: SECTION 1983 PROCEDURAL DUE-PROCESS CLAIM UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

92.     Paragraphs 1–43 are incorporated as if stated verbatim herein.

93.     The Fourteenth Amendment guarantees, among other things, the right to procedural due process for Plaintiff.  *See, e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976).

94.     Plaintiff has a constitutionally protected property interest in the Equity of its Property.

95.     Defendants did not and do not provide any process, legal mechanism, or opportunity to seek recovery of either the Equity destroyed by their actions in foreclosing and selling the Property.  Indeed, Defendants have failed to provide

any mechanism for compensation at all—before the seizure, before the sale, or after the sale.

96.   All actions undertaken by Defendants in relation to this utter lack of process were done under color of state law.

97.   All actions undertaken by Defendants in relation to this utter lack of process were further done pursuant to official policy, practice, or custom of Defendants or their final policymakers.

98.   Defendants' actions were intentional and wanton as to Plaintiff's constitutional rights.

99.   These actions, as violations of the U.S. Constitution, are redressable under 42 U.S.C. §§ 1983, 1988.

100.   As a direct and proximate result of the Defendants' failure to provide adequate procedural due process, Plaintiff has been injured and have suffered damages.

## COUNT VIII: UNJUST ENRICHMENT CLAIM UNDER MICHIGAN LAW

101.   Paragraphs 1–43 are incorporated as if stated verbatim herein.

102.   Defendants have illegally seized Equity from Plaintiff and unlawfully retained Excess Proceeds from the sale of the Property.  This unlawful seizure and retention has unjustly enriched Defendants Oakland County and City of Troy.

17

103.   It is inequitable for Defendants Oakland County and City of Troy to retain the Excess Proceeds from the sale of the Property at auction as those definitionally exceed the Taxes Owed for the Property.

104.   Plaintiff has no adequate remedy at law, except as asserted in this Complaint.

105.   As a direct and proximate result of the Defendants' actions, Plaintiff has been injured and have suffered damages, including but not limited to the deprivation of Excess Proceeds.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Court grant it:

A.   Any and all damages and/or compensation as is deemed proper, together with interest and costs, including such interest as provided for by *Knick v. Twp. of Scott*;

B.   A declaration that Defendants' conduct was and is unlawful and/or unconstitutional, even if purportedly being undertaken consistent with Michigan's General Property Tax Act;

C.   Disgorgement from Defendants of any proceeds from the sales or auctions beyond the Taxes Owed on the Property;

D.   Any other damages available under federal or state law, including but not limited to an award of nominal and punitive damages;

E.   Attorney fees and expenses pursuant to all applicable laws, rules, or statutes, including but not limited to 42 U.S.C. § 1988; and

F.   All other legal and equitable relief which the Court deems proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all issues that are triable.

Respectfully submitted,

BUSH SEYFERTH PLLC

By: */s/ Moheeb H. Murray*
Moheeb H. Murray (P63893)
Derek J. Linkous (P82268)
Mahde Y. Abdallah (P80121)
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
Tel/Fax: (248) 822-7800
*murray@bsplaw.com*
*linkous@bsplaw.com*
Dated: November 30, 2021   *abdallah@bsplaw.com*

Attorneys for Plaintiff